Dear Mr. Sambola:
This office is in receipt of your request for an opinion of the Attorney General in regard to various issues of concern to you. In your request you set forth the following:
 1. You indicate there have been occasions in the recent past where Aldermen were excluded from meetings with Representative Winston, Senator Jerry Thomas, and Congressman Vitter where you feel you should all be able to show an interest. Accordingly, you ask when a State or Federal elected official comes to town, and we are making inquiries and listening to their comments, and no decisions are made, can we have our Mayor and all of our Aldermen present without violating the sunshine law?
 2. You state a school board member was appointed to the position of Planning and Zoning prior to being elected to the school board, and you ask whether there is a conflict of interest for a Parish elected school board member to also be on the village planning and zoning commission?
 3. The Village of Folsom lies within Fire District Five and is being threatened with a lawsuit by a Board Member of the Fire District. Inasmuch as an Alderman of the Village of Folsom is chief of Fire District Five, you ask if there would be a conflict of interest with the Alderman as the Fire Chief?
 4. Also you ask if there is a conflict of interest by an Alderman who was appointed to the Recreation District prior to being elected Alderman, and the Recreation District is leasing land from the Village and is building a recreation center?
Certain factual circumstances would control the answer to your first inquiry with regard to the application of the open meetings law when a quorum of a public body is present listening to and making inquiries at a meeting with a visiting elected official.
 R.S. 42:4.2(1) sets forth the following definition:
 "Meeting" means the convening of a quorum of a public body to deliberate or act on a matter over which the public body has supervision, control, jurisdiction, or advisory power. It shall also mean the convening of a quorum of a public body by the public body or by another public official to receive information regarding a matter over which the public body has supervision, control, jurisdiction, or advisory power. (Emphasis supplied.)
It appears the last sentence of this definition is pertinent to the situation in question. While you state "no decisions are made", the definition extends "meeting" to include a convening of a quorum of a public body by the public body or another public official to receive information over subject matters within the public body's control.
Consequently, we would conclude if an invitation is simply extended to attend an open discussion that is either a public forum or open to the general public, it would not constitute a "convening" as a public body. However, if there is a meeting pursuant to an invitation to them as members of the board this would fall within the definition of R.S. 42:4.2(1). "Convening" is defined in part in Webster's 3rd New International Dictionary as "to come together, meet, or assemble in a group or body (as in a formal meeting for some specific purpose)."
This office has recognized that the provisions of the open meetings laws do not apply to chance meetings or social gatherings of members of the public body at which there is no vote or other action taken. Atty. Gen. Op. Nos. 96-400, 90-376. This is set forth in Subsection B of R.S. 42:4.2 which provides as follows:
 The provisions of R.S. 42:4.1 through R.S. 42:12 shall not apply to chance meetings or social gatherings of members of a public body at which there is no vote or other action taken, including formal or informal polling of the members.
Additionally, in Atty. Gen. Op. No. 99-215 this office stated that the appearance and observation at a public meeting by a councilman, when not in his capacity as a member of the public body but as an observer, would not constitute him as attending in his capacity as a member of his public body.
While it would seem that your second question is a matter under the dual office-holding statute, we find the issue is controlled by the provisions of R.S. 33:103(C). Such a conclusion was reached by this office in Atty. Gen. Op. No. 97-84 wherein it was observed that R.S. 33:103(C) was the latest expression of the legislative will despite that it would seem the dual office-holding provisions of R.S. 42:64 would cover the town zoning commission. Therein it was stated that a prohibition under statutory law exists denying an individual from holding the elective office of alderman while simultaneously serving as a member of the town zoning commission. R.S. 33:103(C) provides as follows:
 (1) All members of a commission, whether a parish or a municipal planning commission, shall serve without compensation and shall hold no other public office, except they may also serve as members of any duly constituted regional commission of which their parish or municipality forms a part. (Emphasis supplied.)
This office found no prohibition of an individual serving as an elected school board member with the Terrebonne Parish School Board and serving as Executive Director of the South Central Planning and Development Commission inasmuch as the Executive Director was local employment as distinguished from holding membership on the planning commission. It was stated, "Were you to hold membership on the planning commission, you could legally hold no other elective office as LSA-R.S. 33:103(C) provides: * * * All members of a commission, whether a parish or a municipal planning commission, * * * shall hold no other public office." Atty. Gen. Op. No. 98-151.
Therefore, the elected school board member cannot simultaneously serve on the municipal planning commission under R.S. 33:103(C).
Without knowing the basis of the threatened lawsuit by a board member of the Fire District against the Village where an Alderman is also Fire Chief of the District, but in regard to your inquiry whether there is a conflict of interest, we find there is a statutory prohibition against holding an elected position in a political subdivision of this state and at the same time holding a full-time appointive office in the government of a political subdivision of the state in R.S. 42:63(D).
In R.S. 40:1492 the Parish governing authority is given power to create fire protection districts and. that the districts so created "are subdivisions of the state". Additionally, R.S.33:1972(B)(2) specifies that a district fire chief shall be "on active duty on an assigned shift at all times in each fire district".
In Atty. Gen. Op. No. 92-61 this off ice found that an elected town alderman could not hold the position of appointed fire chief in the Concordia Parish Fire Protection District No. 2 under the prohibition of R.S. 42:63(D). The fire district is a subdivision of the state, and that the fire chief is a full-time job that is appointed by the fire district board. This opinion was affirmed in Atty. Gen. OP. No. 96-218.
In regard to your final question whether there is a conflict of interest when an alderman also serves on the Recreation District which is leasing land from the Village of Folsom and building a recreation center, we first note that R.S.33:4562 provides that the police jury of any parish is authorized to create recreational districts which shall "constitute a body corporate and shall have the power and right to incur debts and enter into contracts and to do and perform any and all acts in its corporate name". Despite this authorization, pursuant to R.S.33:4567 the legislature created. the St. Tammany Parish Recreation. and Parks District, which was declared to be a political subdivision of the state. However, under R.S. 33:4567.4
the commission ceased to exist on June 30, 1996 and its powers and property transferred to the parish governing authority.
We find no prohibition under R.S. 42:63(D) of the dual office-holding statute inasmuch as we assume the position on the commission is a "part time" appointive position, and R.S.42:63(D) prohibits a person holding an elective office in a political subdivision of this state to hold at the same time "another elective office or full-time appointive office" in the government of the state or a political subdivision.
However, there remains for consideration the situation that the Recreation Commission of which the Alderman is a member has a lease with the Village governing authority of which he is also a member. While we do not find that this falls within the provisions set forth in R.S. 42:64 as incompatible offices, we believe this question should be presented to the Louisiana Board of Ethics, 8401 United Plaza Blvd Suite 200, Baton Rouge, LA 70809.
We hope this has sufficiently answered your inquiries, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: BARBARA B. RUTLEDGE
Assistant Attorney General
RPI/bbr